[Civ. No. 24987. Second Dist., Div. Three. Aug. 29, 1961.]

MORRIS KUDLER et al., Respondents, v. ALBERT HING et al., Appellants.

William C. Rau for Appellants.

Lieberman, Weisz and Lieberman for Respondents.

SHINN, P. J.—Defendants appeal from a judgment of specific performance of a contract for the sale of real and personal property, consisting of an option to purchase, exercised by the optionee. The judgment requires the defendants to transfer the property in question through escrow upon the receipt of $25,800, this being the amount of the purchase price of $53,600 after the application of $15,000 in the hands of the defendants, and less certain rentals theretofore paid by plaintiffs to defendants under protest, as rentals of the property from January 1, 1959, in the sum of $12,800. Defendants are required to furnish the standard form of title insurance, insuring the title in the plaintiffs in the sum of $53,600 free of liens and encumbrances but subject to conditions, reservations and easements of record as of January 1, 1954. Defendants are also required to transfer by bill of sale certain personal property on the premises, as per schedule attached to a lease, without further consideration.

Plaintiffs' rights of purchase are derived from an option contained in the lease of the premises to them for the period January 1, 1954, to December 31, 1960, at a rental of $800 per month. As security for faithful performance plaintiffs deposited with defendants $15,000, the same, or the unused balance thereof, to be applied on the purchase price if plaintiffs acquired the property. The option to purchase is set out in the footnote.[1]

[1] "Lessee shall have the right and option to purchase from Lessor the above demised premises through exercise of said option by written notice to Lessor given at any time after November 15, 1958 and through November 15, 1960, inclusive, for the cash price of Fifty-three thousand six hundred dollars ($53,600.00), payable in full within forty-five (45) days after such notice of exercise of option. In event Lessee exercises said option to purchase, an escrow shall be promptly opened for the consummation of the sale, and deposit by Lessee of said total purchase price in said escrow within said forty-five (45) days

The controversy arose out of the instructions given by the parties to an escrow holder when plaintiffs exercised their option and endeavored to comply therewith. The following is a chronology of the events:

November 22, 1958, plaintiffs gave notice of their decision to purchase the property; December 9, an escrow was opened and instructions were prepared and furnished to the parties; December 23, plaintiffs requested amendments of the instructions; December 26, amended instructions prepared; December 31, additional amended instructions prepared; January 2, 1959, defendants' attorney notified plaintiffs' attorney that the amended instructions were unacceptable; January 6, plaintiffs deposited in escrow $38,600, being the agreed balance of the purchase price; January 23, defendants deposited their grant deed and the sellers' instructions as originally prepared; January 30, defendants cancelled the escrow and recalled their deed; February 6, the escrow officer notified plaintiffs of cancellation of the escrow; February 13, plaintiffs deposited the original instructions with the two sets of amendments and their attorney notified defendants' attorney of the action taken; February 23, defendants' attorney replied that plaintiffs had not complied with the option but had in fact rejected it; February 25, plaintiffs by letter gave new notice of their election to purchase. The parties refer to this letter as a reexercise of the option.

It is not questioned that plaintiffs, in their first instructions made excessive demands, which they later modified. The court found that plaintiffs had eventually taken all the steps required on their part in the exercise of the option. While defendants question the sufficiency of the evidence to justify this finding it is not contended that plaintiffs' instructions, which were finally submitted, made any demand of defend-

shall be a compliance with the above requirement for payment. Lessee may direct that any balance of the security deposit remaining in possession of Lessor shall be treated as a part payment on the purchase price and in such event the amount required to be deposited in escrow by Lessee shall be reduced accordingly. Title to said premises shall pass at close of escrow but in no event before January 1, 1959, which title shall be guaranteed by an acceptable, responsible Title Company, free and clear of any and all liens, encumbrances, claims or demands, and subject only to such conditions, reservations, easements, etc. now of record, and the rental obligation of Lessee hereunder shall continue down to the date of said purchase price or January 1, 1959, whichever is later. It is understood and agreed that the exercise of the above option to purchase by Lessee is dependent and conditional upon this lease being in existence during the period specified above for exercise of the option and upon Lessee being free from any default in performance hereunder during such period."

ants in excess of plaintiffs' rights under the option. The court also found that defendants' instructions did not conform to the contract and that defendants were guilty of a willful breach thereof. The court also found: "VI. That from and after December 22, 1958, the defendants demanded that plaintiffs accede to the said escrow instructions caused to be prepared by the said ALBERT HING, without any change, deviation, or qualification; that plaintiffs informed defendants of their desire to proceed with their said contract and that they would seek to determine whether they could proceed under the said escrow instructions; that thereafter plaintiffs deposited into escrow the moneys required under the contract on January 6, 1959; that only thereafter did defendants sign the said escrow instructions and deposit the same into the escrow, and canceled the said escrow one week later; that plaintiffs were not informed that the said instructions were signed, or deposited, or that the escrow was canceled until all of the same had taken place; that defendants breached the contract wilfully. VIII. That plaintiffs were not and are not in default under their lease and option contracts with defendants."

Defendants' instructions called for the deposit of the purchase price on or before January 2, 1959, whereas the option called for a deposit to be made within 45 days after the exercise of the option, which time expired January 6, 1959. Also defendants' instructions would have required plaintiffs to accept a title to be subject to certain "rights, rights of way and easements for public utilities, alleys and streets; and covenants, conditions, restrictions and reservations now of record" (on January 2, 1959), whereas the option provided that plaintiffs' purchase was to be subject to "conditions, reservations, easements, etc. now of record" (on January 1, 1954). The court also found upon sufficient evidence that defendants consistently refused to deviate from their instructions. Plaintiffs took some time in making inquiry whether they could safely comply with defendants' instructions.

Defendants' brief states the questions involved as follows: "I. Did the court err in the admission of evidence? II. Did the court err in holding that defendants had breached the contract?" We shall discuss these propositions in inverse order to their statement.

 Defendants rely upon the provisions of the option that it was dependent upon the lessees being free from any default in performance during the lease period, and they say

that plaintiffs were in default in performance of the rental covenants at the time of the reexercise of the option following defendants' cancellation of the escrow. They contend that plaintiffs owed rent for the months of January, February and March 1959 at the rate of $800 per month, and they rely upon the fact that plaintiffs in March gave their check for the amount, although it was paid under protest. We cannot agree that plaintiffs were in default in the payment of rental, inasmuch as they were not in default in their efforts to consummate the purchase, and were therefore excused from making further payments of rent while details of the escrow were being worked out. Moreover, the court was justified in holding that plaintiffs were not in default within the meaning of the option, inasmuch as it was provided in the lease that they should have 30 days to remedy any failure to perform after notice from defendants of any default or dereliction.

 Under the findings of the court the failure of consummation of the purchase through the escrow was due to the refusal of the defendants to withdraw their demands that plaintiffs accept a title to be subjct to "rights, rights of way and easements for public utilities, alleys and streets; and covenants, conditions, restrictions and reservations" of record on January 1, 1959. Before plaintiffs could satisfy themselves that they could safely accept such a title defendants withdrew from the escrow and refused further performance. We therefore conclude that there was sufficient evidence to support the findings that plaintiffs took all steps required of them in the purchase of the property, and that defendants wrongfully refused to consummate the purchase.

 The contention to which defendants' brief is devoted in greater part is that the court improperly received extrinsic evidence respecting the terms of the option agreement. They say: "The trial court admitted extrinsic evidence over objection from which it concluded that the lease agreement was to be construed as a present sale of the property involved as of January 1, 1954, at a price of $85,000.00. This was contrary to the provisions of the lease agreement itself which provided for a selling price of $53,600.00 upon exercise of the option between November 15, 1958, and November 15, 1960." We find this contention to be without merit.

The evidence in question is a typed computation entitled "Reconstructed formula option price at end of 60 months (5 years) based on $800.00 per month payments—6% interest. Property offered for $85,000.00 Down payment $15,000.00

Balance $70,000.00." Following that are allocations month by month of $800, by which sums are credited to interest at 6 per cent on the purchase price balance, starting at $70,000, and the remainder is credited to principal. Under this purely theoretical analysis these credits would amount to $31,400 and the amount of principal remaining unpaid at the end of 5 years would be $38,604.44, which, added to the deposit of $15,000, would equal (except for $4.44) the purchase price of $53,600, which was the option price.

There was evidence that defendants had priced their property at $85,000. The computations prove nothing more than that defendants would eventually receive from the purchase on the option terms the same amount they would have received if they had sold the property for a down payment of $15,000 with the balance paid monthly at 6 per cent interest. The court received the computation only as a matter of convenience, stating that the court itself could readily have made the computation for the purpose of ascertaining the amount defendants would ultimately receive.

Defendants discuss at length, with citation of many cases, the elementary rules governing the receipt of extrinsic evidence in the construction of writings. There is no need to encumber this opinion with a statement of the law on this subject. Anyone seeking enlightenment will find it in *Apra* v. *Aureguy*, 55 Cal.2d 827 [13 Cal.Rptr. 177, 361 P.2d 897], and cases cited. The parties are not in disagreement in their understanding of the law. Their disagreement is as to its applicability to the facts in question. We find that for two reasons the rules are without application. In the first place, the evidence did not tend to add to, detract from or in any manner vary the terms of the option. In the second place, the evidence was received solely because of its relevancy to questions of the adequacy of the consideration to be paid, the understanding of the parties respecting the same, and the justness and the reasonableness of the contract.

Both the parties and the court understood, and so stated, that the agreement was not ambiguous with respect to any of its terms, and that no evidence was required or offered for the purpose of explaining what the agreement meant or was intended to mean.

Counsel in the case, being familiar with the law on the subject, understood that it was incumbent upon plaintiffs to sustain by their evidence the allegation of their complaint "that the agreement was and is fair, reasonable and just in

all its parts and supported by an adequate and valuable consideration'' and that the price to be paid and plaintiffs' other promises were reasonably commensurate with the value of the property at the time of said lease and option. By their answers defendants admitted that ''the value of the property at the time the agreement was entered into was $85,000.00 cash, not including personalty.''

Notwithstanding this admission, there was conflicting evidence as to the value of the property. The court found the option contract to be just and reasonable, and the consideration to be paid fair and adequate. Defendants do not question the sufficiency of the evidence to justify these findings, otherwise than to say: ''It seems obvious also that where $85,000.00 is found to be the reasonable value of property, a price of $53,600.00 is inadequate as a matter of law.'' The $53,600 consisted of $15,000 already in the hands of the defendants, plus $38,600 to be paid through escrow. Defendants were satisfied to sell at the price they would have received upon an installment sale under which they would have received on principal $31,400 which, added to $53,600, would give them $85,000.

This evidence, and other evidence to be mentioned, of which plaintiffs complain was received and considered by the court solely upon the issue of justness and reasonableness of the contract. Defendants having admitted that $85,000 would have been a fair price for the property if it had been paid in cash probably contended that under the lease and the purchase pursuant to the option they would receive something less than the equivalent of $85,000 in cash on January 1, 1954. They do not undertake to show how much they would have had at the end of a five year period if they had received $85,000 January 1, 1954, and had had the use of the money for a period of five years, as compared with the amount they will receive upon complying with the judgment. As a mathematical proposition, they will receive less under the judgment but that does not mean they will not receive the full value of the property. There are features of the lease arrangement which gave other advantages to defendants. If plaintiffs had not purchased the property they would have been required to pay a rental of $800 per month for seven years, and in addition thereto, all taxes on the property, and would have been required to keep it in repair. There was a store building on the lot with no unusual furniture and fixtures. A net rental of $9,600 per year for a property worth only $85,000, which would give a

clear return of 11.3 per cent, would be unduly favorable to the lessor. Also, installment sales may have advantages to the seller over sales for all cash, and it is to be presumed that the parties had in mind the advantages or disadvantages of the form of transaction which they agreed upon. There was no evidence as to any of these matters. We find nothing in the record which brings in question the finding that the price to be paid was the full value of the property.

There was some evidence that prior to the execution of the lease, in negotiations looking toward a sale of the property, Mr. Hing, representing the defendants, had priced the property at $85,000 and had stated the willingness of the defendants to sell it at that price, and Mr. Hing testified that the asking price of defendants was $85,000 cash. The evidence with respect to earlier conversations concerning the price of the property was received over objection. It is contended that this was error. In receiving the evidence over objection, the court clearly stated that it was received for the sole purpose of any bearing it might have upon the value of the property, and as to the understanding of the parties as to its value. There was no evidence received of former discussions or statements of the defendants that was inconsistent with Mr. Hing's testimony that defendants priced the property at $85,000. There was no error.

The case was tried without error and the judgment properly determines the rights and obligations of the parties.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.

A petition for a rehearing was denied September 13, 1961, and appellants' petition for a hearing by the Supreme Court was denied October 25, 1961.